Okay so at this point I can't do this with 1B, I'm not lucky enough to do that, because I can't do this with 1C, I can't do this with 1D, So starting with the interrogation video. In that video, Mr. Oduru is struggling to answer a question and at one point he says, I don't know how to tell. There's non-sequitur answers, there's grammar and syntax problems, there's evidence that he wasn't understanding the questions and those appendix types are in our briefing. At trial, things got worse. And this is understandable, it's a high-pressured hearing, he's being peppered with questions from the prosecutor, he's trying to give precise answers and he says multiple times, I don't understand or I didn't understand the question. That's appendix 665, 680, 695. The court reporter interrupts 15 times asking for clarification, at one point admitting I didn't understand what he said, appendix 673. If the court reporter's not understanding Mr. Oduru, the jury is likely not understanding him either. He's using nonsensical phrases, he's having difficulty understanding questions, finding words or vocabulary, and again there's grammar and syntax problems throughout. And so what's important here is it's not, the judge doesn't need to be certain and the Third Circuit tells us this in BC, that the judge just has to consider whether the person might have difficulty with English and this is also supported by the Tenth Circuit in Osana, which has very similar fact patterns to our case, where someone testified without an interpreter and there the court remanded because just like here, the district court never made any fact findings about the defendant's language abilities and the difficulties. And so this case is a hard one. Could we just get over to the Court Interpreters Act? Is it your argument that there's a mandatory duty on judges to inquire for the need of an interpreter? Yes, your honor, and the language in the Court Interpreters Act specifically says that the presiding judicial officer on such officer's own motion can appoint an interpreter. The statute anticipates this situation where trial counsel remains silent, maybe this is something outside of their wheelhouse, and there's a protective mechanism built into the Court Interpreters Act for this exact reason. If a person doesn't understand, doesn't have the ability in English, if they have difficulty with English, we cannot be confident that that was a fair trial. Could I ask you a question about, there's a Judge Baxter issued an order, a motion to suppress, and there are some other motions, a pretrial order in September of 2023, and she states on page six of that, a Duroo, an Indian national, speaks and understands English. Is there any duty on counsel once the judge has raised the issue, as she arguably has there, to correct that misapprehension once it's on the table? So first for the motion to suppress, that issue did not involve Mr. Duroo's language ability. The premise of the motion to suppress was not that he, let's say, didn't voluntarily know his rights, has Miranda rights. The court there was determining kind of the circumstances, whether there was a forced confession. But even if it's, so it might be dicta, but you assume that it's not a very long order, it's 11 pages, you would assume that counsel would read the order and take note that the judge seems to think that my client speaks and understands English and therefore she's put this issue on the table. Is there any obligation on counsel at that point to say something or, you know, the issue has been raised and therefore the judge should understand that, well, I guess they agree with me. Certainly this would be easier if trial counsel said something, but again the Court Interpreters Act anticipates that trial counsel wouldn't. And that's why, because this is such an important constitutional right, the statute places this burden equally on the court. And it is true that... Just so we can have our framework, this is plain error review on this issue, right? So we would... Yes, right. I do not believe that plain error review applies here. In this situation, this type of claim will always be brought the first time on appeal because it's about the court abandoning its statutory duty. If trial counsel would have said something, right, and would have brought this to the court's attention, the court would have made an inquiry, the court would have issued a ruling, and then we'd be in abuse of discretion. In this situation, the claim is that the district court abandoned its statutory duty. In that situation, this claim is brought for the first time on appeal. You mentioned at the beginning that there was a motion at the beginning of the case about raising the language issue. So the motion that was filed was to ask for an interpreter, well for an expert who spoke Mr. Aduru's primary language of Tolugu. So it was not asking for an interpreter, but it put the court on notice that Mr. Aduru's primary language is not English, and that he needed to speak to a professional in his primary language. Well, people speak more than one language, right? Absolutely, and here Mr. Aduru does speak and understand some English, but that's not the question. But he was a customer service person. He dealt with English speakers all for his job, right? Well, so we actually don't know that. In the record, the court never explored his employment, so we don't know was he using a translation device? Was he reading off a script? Did he have assistance? Because the court never inquired, we don't have those answers. How about his college education? I mean, he was here to be a college student, right? Absolutely. Is there any evidence in the record of a transcript? Do we know how many years of English he took in his home country? Do we know anything about that that would tip the judge off that, for example, he's not able to take college courses in English? I assume that the school is teaching in English. Your honor, that's a great question, and that's what should have been probed by the district court below. We don't know the answers to those questions, and yes, Mr. Aduru was here studying abroad, but we learned during sentencing that he was failing his classes in America. We don't know why, because the court never inquired. Just because someone speaks and understands some English does not mean that they don't need an interpreter, especially when they're testifying and their credibility is that issue. He has to be testifying precisely. He needs to be giving direct answers, and he's up there by himself without an interpreter only in the United States for about one year, and no one had asked him, is English your primary language? Do you have difficulty with English? Can you sufficiently understand English? And make that determination, and that's why this court needs to remand, and under either standard of review, we do believe we can satisfy plain air here, because Mr. Aduru was prejudiced. He testified. The jury made an adverse credibility determination. The prosecutor used his language against him and told the jury he's not answering the questions. He's giving long rambling answers. It was used against him. You don't have a whole lot of time. Let's jump over to the strikes. That's your second issue, right? The biased juror issue, your honor? Yeah, that's right. So with juror 29 during Vaudier, it became clear that he was a 9-1-1 dispatcher who believes that a person who's been charged with a crime is probably guilty. When he was asked to explain this belief, he didn't show confusion or maybe I misunderstood. He doubled down. He said, I believe the police did their investigation, which means they have the information to prove he's guilty. Yeah, but there was more too, right? And then he was asked, can you set aside that belief? And he did not say yes. His answer was not clear and it was not unequivocal. He said, I could set that thought aside with the evidence. That is not the standard. The U.S. Supreme Court tells us in Ervin that when a juror expresses a preconceived opinion as to guilt and requires evidence to overcome that, that juror is impartial and cannot sit on the jury. So why not strike him with the peremptory? So things got complicated with the peremptories. So juror 29 ultimately was relegated to the alternate pool. In the alternate pool, defense counsel only had one strike. There were two jurors in the alternate pool that he wanted to strike for cause. There was juror 29 who had the preconceived opinion of guilt and juror 31 who expressed concern about the subject matter involving children. Trial counsel opted to strike juror 31. There were no more peremptory challenges for juror 29. Juror 29 initially sat as an alternate. Ultimately, juror 7 was removed and juror 29 sat on the jury and deliberated. And that juror believed that Mr. Aduru was likely guilty by virtue of being charged. Mr. Aduru was deprived of an impartial jury and that requires automatic reversal. So every judge has their own jury selection procedures and I read this judges as carefully as I could, but I assume defense counsel could not have exercised a peremptory on 29 even though it looked like 29 was only going to be alternate pool? So trial counsel was not able to exercise a peremptory challenge because he was in the alternate pool. The kind of issue I talk about with the kind of the court going out of order and not allowing Mr. Aduru the free exercise of his peremptory challenges against the jurors in the first 28, that is what prevented him. Did counsel say anything about I would exercise a preemptory and strike this juror if I had any preemptory challenges left? Did he make any statement like of that type for the record? Your honor, he did not make that statement, but the district court after denying the forecast strike told trial counsel you might want to use one of your peremptories, but then the court deviated from its jury selection order and manipulated the jury pool relegating juror 29 and 31 to the alternate pool preventing him from using one of his 10 peremptory challenges on both of those jurors. Did counsel have anything to say about it to say hey I've got extras on this side but you know can I exercise one on the other side? Counsel did not and the but rule 24 is is clear that counsel only gets one strike for alternate jurors. But I suppose the judge and her discretion could have allowed one of the non-alternate strikes to be used on a juror that would be in the alternate pool. I mean I guess the argument you just made I think would be much more compelling if it had been made in the trial court. I guess that's the way I'm putting it because I see the conundrum you're raising here. I have one strike, I have two people I want to strike, I've only used half of my peremptories, why can't you give me another peremptory? A lot of judges would have done that. And unfortunately here trial counsel did not ask for that but jury selection is in the province of the of the judge and here the judge interfered with Mr. Aduru's free exercise of peremptory challenges which prevented him from getting rid of juror 29. You made a statement before you said there's two, we're okay, you're on our time so it's okay. But you've got juror 29 who we know about, the other one who has some problems with the subject matter of the case. You had said you know he's got two bad jurors, he's got one strike, he chose the other one. Was that in any way communicated to the court? In my review of the record it was not. I didn't see it, yeah. Okay great. Why don't we get you on rebuttal and let your friend present his arguments. Thank you so much. Thank you. Morning. May it please the court, AUSA Donovan Kokus on behalf of the United States. I think I'll start with the translation issue, the the interpreter issue. I think the standard review is going to be plain error. I know there's the third circuit Haywood case but when I read it that looks to be applying a waiver rule in a case where someone had said I was given an interpreter but they misinterpreted. And that makes sense to me that that would be a waiver whereas in this case the structure of the rule itself does seem to presuppose that either the court or counsel can raise an interpreter issue. So I don't go as far as the defense to say that means there's a duty. It just means it doesn't matter who recognizes there's a problem. If someone recognizes it then it can be addressed. Okay in this case I think the defense has been stating what the rule states in in a way that's skewed toward the defense. It's not do you have difficulty with English. It's not are you fluent in English. The rule says if on the court's own motion or on party's motion does the court learn that a defendant or witness is likely to be inhibited in understanding or in communicating or comprehending the proceedings because of an English deficit. Okay so I agree English is not Mr. Aduru's first language but he definitely the district court definitely didn't get notice of that latter category and we can just start with the judge by the time this guy is in trial knows he was from India where English is an official second language. She knows he's here on a student visa at two universities where classes are taught in English. She knows that he's texted for weeks in English with what he thinks is a 13 year old girl. No apparent problems there. In fact if you look at the time notations on the on the text messages they're boom boom boom. It's not like he's taken a long time to come up with English responses she knows that he is spending his free time in Erie hanging out bars trying to pick up with American women pick up American women. She knows that he has sat for an 80 minute interview in English with police and if you watch that which I would urge you to do because it's very enlightening he's very much like a poker player he is doing this strange head wobble thing which he attributes to nerves but in the beginning he thinks he's holding all the cards because he has deleted all but the two days of text messages from his phone so he's eliminated everything incriminating instead what you've got is when are we going to meet where are we going to meet it's only a few minutes in when he realizes the officers have the other phone that he now has to adapt his story and if you read the transcript and especially watch the video he's quite adaptable I mean he's very nimble at sort of trying to figure out a line to walk it's not a persuasive line but he does tell a coherent story and his story is that he went to the park believing he was going to have sex with a 13 year old girl and instead the FBI comes down on him he said I thought it might be a boy but I went to the park to confirm that this was a girl and if it was I was going to have sex with her that's ultimately what he says and he reiterates that at trial on cross-examination now all of those those factors seem to be grist for this is a guy who seems to be speaking a whole lot of English for someone who doesn't speak English this is what the judge sees the judge sees his attorneys all saying they have no problem communicating with him the judge presumably sees him interacting with his and his attorneys in the courtroom there's just no indication in the court's mind that this man is going to be having any kind of difficulty communicating at trial and he doesn't at trial he he testifies for hours well but but your adversary points out and I think that's it's in the record that the court reporter had some difficulty figuring out what he was saying and it's and so from this I think you can infer and have to infer because remember there's no objection so it's I think you have to infer that the cause of that is what the court said to him at the very beginning which is Mr. Aduru you have a tendency to speak fast and you have an accent to speak slowly I think the inference is that she's not understanding him because either he's speaking too fast or he's got a thick accent or both there isn't any indication the jury fails to understand him now I will say I if the question is not fluency right the carry-on case seems to say fluent is one side of the spectrum clearly not entitled to a an interpreter what's the standard then it's difficulty what's the standard then so I think the standard yeah I think this is why I went with the edward case out of the 11th circuit the standards is going to be if the it's in the district court sound discretion if no one's has objected even if someone has objected and says he needs an interpreter then the discretionary question is did the court err in finding he didn't need one if in this case they're saying the district court should have asked because no one brought it the court's intention it's it should be it's in the court sound discretion based on what he or she he sees or hears because judges can only exercise discretion on the things they perceive so one thing they would have definitely perceived was the request for an interpreter or an expert who spoke the language of the defendant and that's clearly putting the court on notice that at least for something that's complicated the defendant might struggle so I disagree for two reasons I'm sorry I didn't mean to interrupt no no go ahead all right so I disagree for two one it wasn't a request for an interpreter it was a request for a prison transfer so he could be closer to that interpreter and tellingly the court says and correctly because they don't appeal this issue the court says the BOP makes housing decisions I don't interfere with those so I can't transport you to be closer to that interpreter but what I will do since you're indigent if you want that interpreter and that psychologist to come out and give you a psycho vowel those can be flown out to you at government expense now what's interesting is you know what happens after that nothing his counsel did not get one of those psycho vowels in Telugu or any other language as far as we know and that tells you that number one really this wasn't about a psycho vowel this is about a prison transfer that he didn't get and number two it tells you that he knows this man speaks sufficient English now now who's he when you say he knows his attorney was a man named Adrian Rowe it was not sure but but I think that I think your colleague would say the whole point of the act is that if the judge is on notice and here we have a request for some language accommodation doesn't the judge have an obligation to inquire then and so I this is brings me you just don't think that's enough notice I don't think it's enough notice in light of all the countervailing factors but here's something else I think it matters that this is a psycho vowel because even people who are fully fluent in a second language might want a psycho vowel in their first language because there are cultural nuances that come into play that might be lost in translation if you did that I suppose the argument could be made though also if they're being cross-examined in a trial facing a long prison sentence they might want the translation as well oh and if so then I then that they might ask for one right instead of saying at every turn I speak and understand English which he did when he sat down for the 80 minute interview after he was arrested he could hardly deny it because of all the texts in English and everything else and then I think what else is interesting this really goes more to the prejudice prong if you even get there but you have to remember too as your honor said I mean this man what did work for a global company in a call center in India talking to him well now on that topic your your adversary pushed back on that and said really there's nothing in the record to give much clarity on that but that how do you explain that kills her on plain error review your honor like that's the problem if there's an ambiguity it cuts against the person raising the error for the first time at trial so and then let's even let's talk about something that's not ambiguous because which is at sentencing he offers a couple of affidavits or letters I would say from people at each of the two universities where he studied here in the United States neither of them said I can't believe he did this this guy doesn't speak English in fact one of them said something the effect of I can't believe it because this guy always participated in discussions and spoke out about women's rights that again this strikes me as more grist for it's at sentencing I know but on the prejudice prong the Supreme Court has said you can consider stuff that happened even outside of the trial context and at sentencing this is just a consistent line showing you this man speaks English and if that weren't enough he tells the probation officer when he's being interviewed for the PSR I speak and understand English that interview occurred two months after trial by the way so if he learned English he learned it in lightning speed if he didn't know at a trial and then finally I just raised one last question one last issue on the fourth prong of plain error because this is I don't often call an issue frivolous legally this is not frivolous I think we can argue whether the court had a duty or not but on these facts it's frivolous and I would just leave you with one more point which is if this man had not spoken English that would have been a defense to the underlying charge the fact that his attorney raises an entirely different offense a different defense which is that I went there on a lark knowing this was actually just a male scammer that tells you his attorney knew this man spoke sufficient English and he even said so in closing you know this is a strange man with a strange way of carrying himself not this is a man who's a stranger in a strange land and doesn't understand the language could you turn to the uh to the uh the questionable juror and at least uh and and the and yeah preemptory strikes right so on I'll be brief on the juror I mean I think this looks to me like any other juror who's ever been who ever said oh I believe x but has been rehabilitated I don't see evidence that that juror um said anything ambiguous the juror saying oh yes with the evidence was just if you read this in context the court had said do you think with the evidence you could do blah blah and he says yes with the evidence he's just repeating what the court said to him what's your take on the conundrum of um having two jurors you want to strike at alternate at the alternate phase and only having one strike well so first I would say it it doesn't matter your honor if in fact they haven't shown that that juror 29 was biased because and I listed the case but oh by the way I mean I think one thing the court must do in this case is uh clarify the standard review on this issue because I think it should say that Rivera overruled Kirk and Ruska because because it did and all the other circuits I could find it and I found even a seventh circuit case called Patterson that overruled it from 2001 and it was overruled on other grounds by Apprendi I want to think but it's still good on Rivera Rivera no Patterson didn't Rivera uh throw uh some shade on our Kirk case no it did that's my point oh I'm sorry yeah no that's okay my point is that it threw shade on Kirk and by extension Ruska because both of them relied on the Swain dicta so so that's why I think the standard review is going to be plain error for this too okay um so on plain error review I don't know how they've showed how they've shown a problem because all they have is a strike form that showed his attorney just used six of ten strikes it doesn't show why it's not uncommon for attorneys sometimes to use fewer than all their strikes sure I get fewer than all and I sometimes use fewer than all my strikes if I want to show off to the jury how confident I am in them in my case and everything else so no one knows why counsel used fewer than all the strikes but that's where the strikes were they written down on a piece of paper like how how are they so I'll assume the paper just has numbers on it 719 yes page 719 of this record yeah there is a strike form where you can see counsel going g1 g2 g3 and then the defense going d1 d2 d3 and they both end at six well can you answer judge Dow's question perhaps you have but what does one do when you have in the alternate pool two objectionable jurors one strike so for first of all I don't know but I think in the end it doesn't matter unless you can show the court did something wrong somewhere else elsewhere in the pool and they haven't shown that the court clawed back four strikes of the of the main pool right so what instead are you saying that he could have used one of the four remaining on the second alternate juror no no no I mean in fact the law is pretty clear that those strikes are cabined to the pools for which they are earmarked okay so if you get 10 strikes as a main pool if you get one for the alternates that's the alternate okay I don't when judge Dow mentioned maybe some judge might give some grace on that I don't know I've never seen that I can't say it's impossible but but all I know is in this case none of that matters because what happens is he only decides to use six as far as we know there's no evidence the court clawed back any and that's where I think the presumption of regularity comes into play and I know the defense has said that this is a radical application of presumption of regularity but no the Jones case that I cited from this court actually shows the court applying it in a case like this where it's a direct appeal of a criminal case where the defendant's saying something weird happened with my counsel and the court says well we'd expect to see a record of that if it really happened we don't ergo on plain error review it doesn't well that was a question I had does the presumption of regularity even apply in direct criminal appeals it does and so the Jones case answers that pretty conclusively and it's polished in this case an alternate did sit an alternate did sit yes and the alternate who sat what is 29 was 29 and if the lawyer had struck 29 the alternate who was set would have been 30 I suppose that's and not 31 who's the alt the one they didn't want and the one they struck yeah I know so that's the interesting if the lawyer had picked 29 they wouldn't we wouldn't be here on this issue right it's the interesting tactical error right because it's no secret that you know the top two alternate next one up yeah to sit right so if you if you were to me if it's a toss-up between two you would always choose the lower number one I don't know yeah you'd have to have bad luck in a short trial like this with short deliberation to have have both alternates seated in this case you had one came in like that right right okay thank you I don't know how I blew past this and tagged every other page and that page is the core that's the whole defense's case about this now the defense has said well and I'm sorry I just go ahead the defense has also said well you know the court was doing some monkey business with the between the two pools nothing like that happened as far as just reading that whole transcript twice now and then looking at the strike form what happened is what always happens which is that as people from the main pool 1 through 28 were stricken for cause then folks in the backfill pool which is 33 and up came in had any of the the alternate jurors from 29 through 32 been stricken for cause the same exact thing would have happened it's just nobody struck any of those for cause okay so well all right thank you counsel thank you and we'll hear a rebuttal starting with the interpreter issue so again ability to speak English is not dispositive to this to this question the question is whether there was difficulty with English the my friend on the other side said the issue was maybe his his he was speaking too quickly but the record doesn't show that the record shows three instances where trial counsel asked Mr. Adu to slow down the other interruptions the court reporter wasn't saying slow down we've all been in court and had a court reporter seeing that they tell people to slow down that's not what happened here the court reporter said I don't know what he's saying the as to the text messages these are rudimentary text messages again this is someone who's supposed to have a master's level education those texts do not show someone with proficient English and then to the point that Mr. Adu you know did engage with the court the the third circuit told us in BC it's ineffective to presume that just because someone can answer basic questions or respond to yes or no questions that they are fluent in English and don't need an interpreter the fact that Mr. Adu was able to speak in English to the detectives that he was able to speak in English during his trial testimony is also not dispositive the ninth circuit of morguea rodriguez tells us that just because a person testifies in English that does not answer the question of whether they needed help so is this the whole purpose of of plain error that that a lawyer should be speaking up when he senses or she senses that that there may be a language difficulty absolutely we don't have that we don't have that but the statute we're all reading the same words but the statute doesn't require it the statute requires the court to also make an inquiry when there's difficulty and the case cited in our briefing pate v robinson robinson this is the supreme court case regarding competency and the failure of the district court to fulfill its statutory duty to hold a hearing when there were indications that this person had mental health issues the court below said there were no problems look he engaged with the court he was trial counsel was asking questions they never asked for a hearing but there the supreme court said evidence of ability is not dispositive there was evidence of difficulty in this record and there the supreme court did not apply plain air but even if this court does apply plain air i would encourage the court to look at the 10th circuit in usana as well as hassan in both of those cases the court remanded for factual finding even on plain error review and here because mr testified because the the jury made an adverse credibility determination because witnesses testified in english we cannot be certain that mr adu received a fair trial okay thank you we thank both counsel for their excellent argument today and for their excellent briefing uh we will take the case under advisement and if counsel is amenable actually judge roth do you have any other questions so sorry i have no further questions okay great uh if counsel's amenable we would love to greet you at sidebar to to thank you more personally thank you okay we'll go back on the record our next case is McGuire